

ORIGINAL

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT
NEW HAVEN**

FILED

2004 FEB 17  P 2: 34

U.S. DISTRICT COURT
HARTFORD, CT.

-------------------------------------------------------------

DIRECTV, INC.,
a California corporation,

                         Plaintiff,

   - against -

CHARLES DESKIN, *et al.*,

                         Defendants.

-------------------------------------------------------------

**PLAINTIFF'S
LOCAL RULE 56(a)(2) STATEMENT**

Civil Action No.  3-03-CV-00518 DJS
Honorable Dominic J. Squatrito

In opposition to Defendant PAUL CIOTTI'S Motion for Summary Judgment, Plaintiff respectfully submits the within Local Rule 56(a)(2) Statement:

1.      Plaintiff concurs with Defendant's statement.

2.      Plaintiff does not dispute Defendant's statement.

3.      Plaintiff does not dispute the portion of Defendant's statement relative to Defendant's employment.  Plaintiff concurs with the portion of Defendant's statement relative to the functions of and uses for smart cards.

4.      Plaintiff does not dispute the portion of Defendant's statement relative to Defendant's second job.  Plaintiff concurs with the portion of Defendant's statement relative to a key card.

5.      Plaintiff disputes Defendant's statement.

6.      Plaintiff disputes Defendant's statement.

7.      Plaintiff disputes Defendant's statement.

8.      Plaintiff concurs with Defendant's statement.

9.      Plaintiff concurs with Defendant's statement.

-1-

10.     Plaintiff disputes that it has no knowledge of the signals or programs Defendant received.

11.     Plaintiff concurs with Defendant's statement.

12.     Plaintiff disputes Defendant's statement.

13.     Plaintiff concurs with Defendant's statement, but believes that such evidence is in Defendant's

        possession and control.

14.     Plaintiff concurs with Defendant's statement.

15.     Plaintiff concurs with Defendant's statement.

16.     Plaintiff disputes Defendant's statement.

17.     Plaintiff disputes Defendant's statement.


## DISPUTED ISSUES OF MATERIAL FACT

Plaintiff respectfully submits the within statement of disputed issues of material fact:

1.      Defendant possessed the equipment necessary to receive Plaintiff's proprietary signals.

        (Defendant's Responses to Requests for Admissions, ¶ 1, annexed hereto as Exhibit "A.")

2.      Defendant knew or should have known that the unlooper he purchased from Vector

        Technologies was intended for use in intercepting and receiving Plaintiff's proprietary signals.

        (Plaintiff's Complaint, ¶ 16, annexed hereto as Exhibit "B.")

3.      There is no legitimate function for an unlooper, the purpose of which is to enable the user to

        intercept and receive Plaintiff's proprietary signals without Plaintiff's authorization. (Affdiavit

        of Stanley F. McGinnis, ¶ 16, annexed hereto as Exhibit "C.")

4.      Defendant was and/or is a DirecTV subscriber and possesses a DirecTV satellite dish.

        (Defendant's Answers to Interrogatories, ¶ 5; Affidavit of Steven Levine, respectively,

annexed hereto as Exhibit "D.")

Dated: February 4, 2004
      Ellenville, New York

Wayne D. Lonstein
LONSTEIN LAW OFFICE, P.C.
Attorneys for Plaintiff
1 Terrace Hill, P.O. Box 351
Ellenville, NY 12428
Telephone: (845) 647-8500
Facsimile: (845) 647-6277
*Our File No. DTV-3CT-02*

Exhibit
A

DTV-3CT-02

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DIRECTV, Inc, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION 3:03CV00518-DJS |
| | ) | |
| v. | ) | |
| | ) | |
| , | ) | |
| | ) | |
| CHARLES DESKIN et al., | ) | |
| Defendant | ) | |

## DEFENDANT PAUL CIOTTI'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

Defendant Paul Ciotti, by and through his undersigned counsel, pursuant to Fed.

R. Civ. Proc. 36, hereby responds to Plaintiff's Request for Admissions as follows:

1. Defendant possessed a satellite television service reception dish during the year 2001 and thereafter.

Response: Admitted.

2. Defendant purchased devices from Vector Technologies and installed or used same in conjunction with the reception of plaintiffs [sic] signals which carried programming supplied by the plaintiff.

Response: Admitted that one (1) device was purchased, denied that it was installed or used as alleged.

4.[sic] In using said device defendant accessed premium services, pay-per-view events and other proprietary signals of the plaintiff without paying plaintiff for same.

Response: Denied

5.[sic] Defendant intended to receive such premium and pay-per-view programming without payment to plaintiff when purchasing, using and/or installing said device.

Response: Denied.

JUL 2 1 2003

Exhibit
B

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT
NEW HAVEN

------------------------------------------------------------

DIRECTV, INC.
a California corporation,

                     Plaintiff,           .       **COMPLAINT**

    - against -                  Civil No.

CHARLES DESKIN,
PAUL CIOTTI, and
JESSE GRECO,
               Defendant(s).

------------------------------------------------------------

Plaintiff DIRECTV, Inc., through its attorneys LONSTEIN LAW OFFICE, P.C., alleges as
follows:

### INTRODUCTION

1.     Plaintiff DIRECTV is the nation's leading direct broadcast satellite system,
delivering over 225 channels of television and other programming to more than 10 million homes
and businesses in the United States.  DIRECTV's television programming currently includes
major cable networks, studio movies and special events programming, as well as a variety of
sports and other special interests programming.  DIRECTV, a California company, has invested
more than $1.25 billion to develop its direct broadcast satellite system.

2.     DIRECTV encrypts, or electronically scrambles, its satellite transmissions to
provide security for and prevent unauthorized viewing of its satellite television programming.
DIRECTV offers its television programming to residential and business customers on a
subscription and pay-per-view basis only.  Each customer is required to obtain a DIRECTV
Access Card and other system hardware (including a small satellite dish) and create an account

-1-

with DIRECTV. Upon activation of the Access Card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV.

3.     Defendants' actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521. DIRECTV brings this action to restrain these illegal activities against it.

## PARTIES

4.     Plaintiff DIRECTV, Inc. is a corporation duly incorporated under the laws of the State of California. DIRECTV has significant interests in maintaining and securing the integrity of its satellite transmissions of television programming, and in prohibiting the unauthorized reception and use of the same.

5.     At all times hereinafter mentioned, defendants;

A.     CHARLES DESKIN (hereinafter "Defendant DESKIN") is an individual who resides at 149 Washington Avenue, West Haven, CT 06516, and who is or was a subscriber to the services of DIRECTV, or who is accessing the proprietary signals using a digital satellite dish along with a pirate device from DIRECTV.

B.     PAUL CIOTTI (hereinafter"Defendant CIOTTI") is an individual who resides at 101 Harwood Road, Waterbury, CT 06706, and who is or was a subscriber to the services of DIRECTV, or who is accessing the proprietary signals using a digital satellite dish along with a pirate device from DIRECTV.

C.    JESSE GRECO (hereinafter"Defendant GRECO") is an individual who resides at 24 Sunbrook Road, Woodbridge, CT 06525, and who is or was a subscriber to the services of DIRECTV, or who is accessing the proprietary signals using a digital satellite dish along with a pirate device from DIRECTV.

6.    In conjunction with a law enforcement investigation of an entity doing business as "VECTOR TECHNOLOGIES," (hereinafter "VTEC"), it was documented that Defendants acquired, purchased or otherwise obtained pirating device (s), as well as related equipment, specifically designed and modified for, and marketed and advertised as enabling unauthorized access to DIRECTV's proprietary signals and defeating electronic countermeasures ("ECMs") employed by DIRECTV, all without payment to DIRECTV.

7.    Upon information and belief, Defendant DESKIN purchased one (1) Vector Fusion Unlooper / Multi Purpose Device from VTEC on or about April 26, 2001. Defendant placed the order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers.

8.    Upon information and belief, Defendant CIOTTI purchased one (1) Vector Super Unlooper with SU2 Code from VTEC on or about March 7, 2001. Defendant placed the order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers.

9.    Upon information and belief, Defendant GRECO purchased one (1) UL Pro with X Code and one (1) PS/2 to DC Adapter from VTEC on or about March 13, 2001. Defendant placed the order by using interstate or foreign wire facilities, and received his orders via the United States Postal Service or commercial mail carriers.

-3-

## JURISDICTION AND VENUE

10.     This action arises under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521.

11.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, 47 U.S.C. § 605(e)(3)(A) and 18 U.S.C. § 2520(a).

12.     Defendants are residents of this District.  Personal jurisdiction and venue are proper in this District pursuant to 28 U.S.C. § 86 because a substantial part of the events giving rise to the claim occurred in this District.

## FIRST CLAIM

## UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS IN VIOLATION 47 U.S.C. § 605(a)

13.     Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs "1" through "12" as if set forth fully herein.

14.     Defendants have received and assisted others in receiving DIRECTV's satellite transmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a).

15.     Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

-4-

16.    Defendants knew or should have known that receiving and assisting third persons in receiving DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendant will continue to violate 47 U.S.C. § 605(a).

## SECOND CLAIM

## UNAUTHORIZED INTERCEPTION OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF 18 U.S.C. § 2511(1)(a)

17.    Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs "1" through "16" as if set forth fully herein.

18.    By using Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming, defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. §2511(1)(a) and/or §2511(1)(b).

19.    Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

-5-

20.    Defendants knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited. Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendant will continue to violate 18 U.S.C. § 2511(1)(a) and/or §2511(1)(b).

## THIRD CLAIM

### POSSESSION OF PIRATE ACCESS DEVICES IN VIOLATION OF 18 U.S.C. 2512(1)(b)

21.    Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs "1" through "20" as if set forth fully herein.

22.    Defendants have used and continue to use Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming, with the intent to avoid making payment of the lawful charges therefor, by trick, artifice, deception, use of a device or decoder, and other fraudulent means, without authority from DIRECTV, in violation of 18 U.S.C. § 2512(b).

23.    Defendants have possessed pirate access devices, which are designed, in whole or in part, to receive subscription satellite services offered for sale by DIRECTV, without the authorization of DIRECTV, with the intent to avoid making payment to DIRECTV of the lawful charges for its programming, and in violation of 18 U.S.C. § 2512(b).

24.    Defendants' violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets

-6-

and proprietary information, and interfering with DIRECTV's contractual and prospective

business relations.

25.    Defendants knew or should have known that possessing and utilizing Pirate Access

Devices was and is illegal and prohibited.  Such violations have caused and will continue to cause

DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such

continued violations.  Unless restrained by this Court, defendants will continue to violate 18

U.S.C. § 2512(1)(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DIRECTV requests that this Court grant the following relief:

(1)    Find the defendants' conduct in importing, possessing and using Pirate Access

Devices violates 47 U.S.C. § 605(a) and (e)(4), 18 U.S.C. §§2511(1)(a) and 2512(1)(b), and

further find that defendants' violations were willful, malicious or for a tortious or illegal purpose;

(2) In accordance with 47 U.S.C. §605(e)(3)(B)(i), and 18 U.S.C. §2520(b)(1), enjoin and

restrain defendants, and persons controlled directly and indirectly by defendants, from importing,

possessing, or using Pirate Access Devices, and further order defendants to surrender all Pirate

Access Devices;

(3)    Award DIRECTV the greater of its actual damages or statutory damages, under

47 U.S.C. §605 (e)(3)(C)(i)(II) and (ii), of up to $110,000.00 as to each pirate device purchased,

owned, used, employed, acquired, re-sold and/or distributed by each Defendant.

(4)    In the event of trial, an award of either (a) statutory damages in accordance with

-7-

47 U.S.C. §605(e)(3)(C)(i)(II), and 18 U.S.C. § 2520(c)(2), or (b) compensatory and punitive

damages in accordance with §605(e)(3)(C)(i)(I), and 18 U.S.C. §2520(c)(2), and DIRECTV's

reasonable attorneys' fees and costs in accordance with 47 U.S.C. § 605(e)(3)(B)(iii), and 18

U.S.C. §2520(b)(3), as to each Defendant;

    (5)    For an award of DIRECTV's costs, reasonable attorneys' fees, and investigative

        fees as to each Defendant.

    (6)    Prejudgment interest on all and damages granted by this Court, as to each

        Defendant.

    (7)    Such other and further relief as the Court deems just and proper.

Dated:  March 18, 2003
Ellenville, NY

                                  **DIRECTV, INC.**

                                  BY: _____

                                  WAYNE D. LONSTEIN
                                  LONSTEIN LAW OFFICE, P.C.
                                  Attorneys for Plaintiff
                                  1 Terrace Hill, P.O. Box 351
                                  Ellenville, NY 12428
                                  (845) 647-8500
                                  *Our File No.  DTV-2CT-07, 3CT-02 & 5CT-02*

Exhibit
C

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN**
------------------------------------------------------------

DIRECTV, INC.,
a California corporation,

                                    Plaintiff,

        - against -

CHARLES DESKIN, et al.,

                                    Defendants.
------------------------------------------------------------

**AFFIDAVIT OF STANLEY F. MCGINNIS**

Civil Action No.  3-03-CV-00518 DJS
Honorable Dominic J. Squatrito

STATE OF COLORADO     )
                      ) ss.:
COUNTY OF   DENVER     )

        STANLEY F. MCGINNIS, being duly sworn, deposes and states the following under penalty of

perjury:

1.      I am President of SECURE SIGNALS INTERNATIONAL (hereinafter referred to as "SSI"),

        which provides consulting and signal security services to Plaintiff, **DIRECTV, INC.,** and, as

        such, am fully familiar with the facts, circumstances and proceedings heretofore had herein.

2.      I make this Affidavit in support of Plaintiff's Opposition to Defendant PAUL CIOTTI'S Motion

        for Summary Judgment.

3.      As part of an ongoing effort to combat the unlawful interception "theft" of satellite service

        provided by Plaintiff,  SSI was engaged by Plaintiff to provide consulting and security services

        aimed at identifying, prosecuting and combating theft of Plaintiff's services and signal.

4.      As part of its efforts, SSI works in conjunction with federal, state and local authorities, as well as

        Plaintiff's internal security officers, to identify manufacturers, distributors and end users of illegal

        devices which are designed to defeat signal security measures.

5.      Throughout the United States, Plaintiff operates a state-of-the-art satellite entertainment

        programming service, delivering hundreds of channels of digital entertainment and informational

        programming to homes and businesses equipped with specialized digital satellite system

        equipment.

6.    Plaintiff provides different levels of programming based on the particular subscription package a subscriber purchases, encrypting its satellite transmissions and employing technology specifically designed to limit programming access to only those lawful subscribers who pay for its services.

7.    The technology relies partially on "access cards" provided to a subscriber as components of the digital satellite system equipment and which, upon activation by Plaintiff, decrypt Plaintiffs satellite signals and permit subscribers to view the programming for which the subscriber has paid. These access cards are but one of the security measures employed by Plaintiff in order to protect its programming against unauthorized access, which is referred to as "pirating" in the industry.

8.    Plaintiff, in conjunction with others, developed the conditional access security system, which looks much like a credit card, to ensure that only lawful subscribers would be able to view its programming.

9.    After a subscriber installs the dish, integrated receiver descrambler, or IRD, and access card at his home or business, the access card blocks access to Plaintiff's programming until the subscriber purchases one or more programming packages from Plaintiff. When the subscriber subscribes to a package, Plaintiff electronically activates the subscribers access card in accordance with that subscription. The access card then acts as a re-programmable microprocessor and uses "smart card" technology to both control which DIRECTV programming the subscriber is permitted to view; and to capture and transmit to DIRECTV the subscribers pay-per-view information.10.    Plaintiff devotes substantial resources to the continued development and improvement of its security system.

11.    Almost simultaneously with the introduction of such security technology into the marketplace, modern day pirates began the process of breaking through the security measures to gain access, without payment, to Plaintiff's proprietary signals, as well as others in the industry.

12.    By circumventing Plaintiff's security measures, pirates gain full access to all of Plaintiff's programming, including pay-per-view events. Because the access cards are the primary security mechanism relied on by Plaintiff, the primary focus of satellite piracy has been modifying and

selling "pirate" access cards, such as that Defendant admits to purchasing, and selling devices that enable such modification.

13.     But for the employment of "pirate" access cards, only lawfully paying subscribers would be able to view Plaintiff's proprietary signals.

14.     In conjunction with a law enforcement investigation of an entity doing business as Vector Technologies, it was documented that Defendant acquired, purchased or otherwise obtained a pirating device, specifically a Vector Super Unlooper with SU2 code, which was specifically designed and modified for and marketed and advertised as enabling unauthorized access to Plaintiff's proprietary signals and defeating electronic countermeasures ("ECMs") employed by Plaintiff.

15.     The pirate device purchased by Defendant allows him unauthorized access to Plaintiff's copyrighted proprietary signals while restoring DirecTV access cards damaged by electronic countermeasures and enabling the cards to again allow circumvention of Plaintiff's access control security.

16.     As discussed in Plaintiff's attached Memorandum of Law , Courts have determined that there is no legitimate use for such devices. The sole purpose of and use for such devices is to enable the user to received unauthorized satellite programming without making payment for such programming.

17.     Plaintiff's ability to attract and retain subscribers, protect and maintain rights to distribute copyrighted programming, and prevent unnecessary increases in rates charged to lawful subscribers as the result of losses associated with piracy depends on Plaintiff's ability to combat pirates successfully.   However, despite Plaintiff's security measures, including the civil prosecution of the pirate industry, Plaintiff's business has suffered, and will continue to suffer, monumental losses.

18.     Based on Defendant admissions that he purchased the illegal device and the invoice reflecting the

purchase of such device, I respectfully request that the Court deny Defendant's Motion for

Summary Judgment as there exists genuine issues of material fact to present to the trier of fact.

Dated: February 4, 2004

     Denver, Colorado

                                            STANLEY F. MCGINNIS

Sworn to before me on this _9th_ day

of February, 2004.

Notary Public

                   JULIE LONSTEIN
              Notary Public, State Of New York
                   No. 4983221
               Qualified in Ulster County
          Commission Expires June 24, 20 07

Exhibit

D

DTV-3cT-02✓

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DIRECTV, Inc,                          )
                                       )
              Plaintiff,               )        CIVIL ACTION 3:03CV00518-DJS
                                       )
v.                                     )
                                       )
              ,                        )
                                       )
CHARLES DESKIN et al.,                 )
              Defendant                )
_____)


## DEFENDANT PAUL CIOTTI'S ANSWERS TO INTERROGATORIES

     Defendant Paul Ciotti, by and through his undersigned counsel, pursuant to Fed.

R. Civ. Proc. 33, hereby answers the plaintiff's interrogatories as follows:

1.  State the name, address, telephone number of each individual who is answering or
assisting in answering each of these interrogatories.

Answer:  Paul Ciotti, 101 Harwood Rd., Waterbury CT.

2.  State the present residence of the defendant as well as each residence of the defendant
since January 1, 1997.

Answer:  See above.


3.  State whether the defendant had or has cable service at any of the residences listed in
Interrogatory 1 or 2 above, for each location please state:   The Cable Television Service
provider at each such location.  In whose names such service was registered.  The
account number for any such cable services.

Answer:  Cable service registered to Tina Ciotti and provided by   (acct.
#8648020010373552).

4. State whether the defendant has purchased any cable pay-per-view programming since January 1, 1997, if so please state:  The date and name of the event; The price of the event.

Answer:  No.

5. State whether the defendant had or has satellite/DBS service at any of the residences listed in Interrogatory 1 or 2 above, for each location please state:  The satellite/DBS Service provider at each such location.  In whose names such service was registered.  The account number for any such satellite/DBS services.

Answer:  DirecTV.  Registered to Paul Ciotti.  Acct. 28531022.

6. State whether the defendant has purchased any satellite/DBS, pay-per-view programming since January 1, 1997, if so please state:  The date and name of the event. The price of the event.

Answer:  Yes. See documents produced pursuant to plaintiff's request for production.

7. State whether the defendant has ever subscribed to any satellite/DBS Premium Cable channels (ie. HBO, Cinemax, Showtime, Starz, Playboy).  If so, please identify each service and the dates defendant subscribed to same.  Whether such service was ever terminated, if so which service item was terminated and the date of termination.

Answer:  Yes.  HBO and Cinemax provided by DirecTV from January 14, 2003 – present.

8. State whether the defendant ever changed the satellite/DBS Television programming subscription level between January 1, 1997 and the present.  If so please state what service were either added or deleted, and the date of such change.

Answer:  No.

9. State whether the defendant ever purchased any satellite/DBS related equipment from any source other than the plaintiff.  If so please state the date of the purchase; The item(s) purchased; The purchase price; How payment was made.

Answer:  Yes.  Purchased a satellite dish for $5.00 cash at a tag sale.  I do not recall the date of purchase, but it was likely in the year 2000 or 2001.

10. State whether the defendant or someone on their behalf ever installed any equipment upon said satellite/DBS system (ie. Access cards, additional receivers or any other related equipment).  What equipment was installed.  If so please state the date it was installed; The date it was installed; Whether it was ever removed; The date it was removed.

Answer:  No equipment was ever installed upon the plaintiff's satellite/DBS system.

11.  Set forth all e-mail addresses registered to or owned by defendant during the years 2000-present.

Answer:  Defendant objects to answering this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.

12.  Set forth the IP address of all computers owned, possessed or otherwise used by the defendant and/or his immediate family during the years 1999 – the present.

Answer:  Defendant objects to answering this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.

13.  State the telephone provider for the premises located at defendants residence in 2001.

Answer:  Snet/SBC.

14.  State whether the defendant had an internet service provider in 2001.  If so please set forth the name address and defendants account number with such provider.

Answer:  Yes.  Defendant objects to providing additional information on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.

15.  State whether defendant made any purchases on the internet from any Vector Technologies or any other computer, electronics or communication equipment vendors during 2001.

Answer:  Yes.

16.  If your answer is in the affirmative, please set forth the items purchased, the dates of purchase and the method of payment for same.

Answer:  See documents produced pursuant to plaintiff's request for production.

17.  Please set forth the defendants employer in 2001.

Answer:  NetZee, 115 Corporate Drive, Trumbull CT.

I, Paul Ciotti, hereby state on oath that the foregoing answers are true and complete to the best of my knowledge and belief.

_____
Paul Ciotti

STATE OF CONNECTICUT

County of *New Haven*                    July *18,* 2003

Then personally appeared before me Paul Ciotti and made oath that the foregoing interrogatory answers are true and complete and that he signed same as his free act and deed.

_____
Notary Public
M.C.E.

JANE K. FLETCHER, Notary Public
My Commission Expires January 31, 2006

Signed as to all objections:

_____
Kenneth D. Quat
132 Great Road, Suite 200
Stow MA 01775
978-823-0620
978-823-0621 (fax)
Conn. Fed. Bar Number: ct24512

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing has been served on plaintiff's counsel by mailing same via first class mail, postage prepaid, to Wayne D. Lonstein, Esquire, Lonstein Law Office, P.O. Box 351, Ellenville NY 12428.

Dated: July 22 , 2003

## PROPERTY INSPECTION AFFIDAVIT

**STATE OF**          :
                                  :SS.:
**COUNTY OF**      :

I, the undersigned, being duly sworn according to law, deposes and says, that on _1/26/03_ , I went to the following residence located at _101 Harwood Rd, Waterbury, Ct_ at approximately _3:15_ am/(pm). This residence is described as a ___2 story, single Family___ , in a ___residential___ neighborhood. **All of my observations were conducted on public ways without entry upon the premises.**

I (was)/ **was not** able to see a satellite dish at the residence.

I observed __1__ satellite dish(es), which are described as __DTV DSS__ each of which is located as follows: ___top of roof, right next to chimney___

The outside of the residence and its layout can be described as: ___Small property with a wood fence surrounding it, green Nissan Pu in driveway___

I took __2__ pictures of the outside of the above described residence **on** _1/26/03_ **date and at approximately** _3:15_ **am/(pm)** which are attached hereto and made a part hereof and are intended to substantiate and verify the location of my observations as described herein.

Dated: This _27_ day of _Jan_ 2003

Signed: _____
Print Name: _Steven Levine_
Agency: _Signal Auditing, Inc._
Address: _PO Box 466_
City/State/Zip: _Ellenville, NY 12428_
Phone/fax:
PI #

State of _New York_    )
                                  ) ss.:
County of _Ulster_     )
On the _27_ day of _Jan_ , **2003**, before me, the undersigned, a Notary Public in and for said State, personally appeared, _Steve Levine_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

MARTHA E. DYMOND
Notary Public, State Of New York
No. 4874397
Qualified In Ulster County
Commission Expires Nov. 17, 20 06