UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 APR 26  A 11: 26

U.S. DISTRICT COURT
HARTFORD, CT.

DIRECTV, INC.,                          )
                                        )
                 Plaintiff              )
                                        )
v.                                      )          Civil Action 3:03CV0518-DJS
                                        )
                                        )
CHARLES DESKIN et al.,                  )
                                        )
                 Defendant              )

**NOTIFICATION OF ADDITIONAL AUTHORITIES IN SUPPORT OF
DEFENDANT PAUL CIOTTI'S MOTION FOR SUMMARY JUDGMENT**

Defendant Paul Ciotti hereby notifies the Court of the following two opinions

bearing on issues raised in his motion for summary judgment, which opinions were

issued and/or made known to defendant's counsel subsequent to the filing of defendant's

reply brief:  (i)  *DirecTV v. Garnett,* C.A. No. C-03-346 (S.D.Tex., Feb. 26, 2004); (ii)

*DirecTV, Inc. v. Mosier,* C.A. No. 1:03-CV-307 (E.D. Tex., April 19, 2004).   True

copies of said opinions are attached hereto as Exhibits A and B, respectively.

Respectfully submitted,

_____
Kenneth D. Quat
9 Damonmill Squre, Suite 4A-4
Concord MA 01742
978-369-0848
978-371-2296 (fax)
CT #24512

Exhibit
A

United States District Court
Southern District of Texas
ENTERED

FEB 2 6 2004

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DIRECTV, INC.,                    §
                                  §
V.                                §        C.A. NO. C-03-346
                                  §
GARY GARNETT                      §
                                  §

## ORDER GRANTING DEFENDANT GARNETT'S MOTION FOR SUMMARY JUDGMENT

In a six-count complaint filed on September 10, 2003, plaintiff DIRECTV, Inc. ("DIRECTV") sued defendant Gary Garnett ("Garnett") alleging that Garnett illegally intercepted DIRECTV satellite signals in violation of federal and state law. DE #1.    On October 24, 2003, the Court, *sua sponte*, dismissed DIRECTV's claim brought pursuant to 18 U.S.C. § 2512 (count 3). DE #7. On December 15, 2003, Garnett filed a motion for summary judgment to dismiss DIRECTV's remaining claims against him. DE #19. DIRECTV has filed a response in opposition. DE #34.   For the reasons stated herein, the Court grants Garnett's motion for summary judgment.

## I. JURISDICTION

The Court has federal question jurisdiction. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. §1367. By Order of Reference entered January 16, 2004, DE #28, this action was referred to the undersigned to conduct all further proceedings, including the entry of final judgment. 28 U.S.C. § 636(c).

## II. BACKGROUND INFORMATION
## AND DIRECTV'S CAUSES OF ACTION

DIRECTV is in the business of distributing satellite television broadcasts throughout the United States. POC [1] at ¶ 2. It charges a fee to use its television broadcast services. POC at ¶4. A customer can purchase a satellite dish to receive the broadcast services, but DIRECTV uses encryption technology to scramble the signal. POC at ¶ 3. In order to descramble the signal, a customer must have a satellite receiver with a removable access card that manages the opening and closing of television channels offered by DIRECTV. POC at ¶3. The access card holds a computer chip which can be programmed by DIRECTV to provide different programming packages, including pay-per-view movies or professional sports packages, to its customers, who pay a subscription fee. POC at ¶ 4. Despite the encryption technology, devices and equipment have been developed to surreptitiously pirate DIRECTV's signals and illegally program valid access cards so that individuals may gain access to all of DIRECTV's programming without payment for these services. POC at ¶ 5.

DIRECTV has conducted raids on businesses which market and sell devices, equipment and software which can be used to intercept DIRECTV satellite communications. POC at ¶ 5. DIRECTV refers to this equipment as "pirate access devices." POC at ¶ 5. On or about May 25, 2001, DIRECTV, aided by law enforcement officers, executed writs of seizure at a mail shipping facility used by several major distributors of pirate access devices. POC at 8. As a result of the raids, DIRECTV obtained shipping records, electronic mail communications, credit card and other receipts

---

[1] "POC" refers to plaintiff's original complaint, filed at DE #1.

2

reflecting distribution of devices designed for the unauthorized interception of DIRECTV's satellite programming. POC at 8.

DIRECTV alleges that on September 18, 2000, defendant Garnett purchased one or more pirate access devices from a distributor known as Whiteviper. POC ¶ 18. In particular, Garnett purchased a combination package invoiced as a "(Combo) Viper Reader/Writer + Whiteviper unlooper." POC ¶ 18. DIRECTV alleges that the reader/writer, also known as a programmer, is primarily designed to permit the illegal programming of valid DIRECTV access cards for the sole purpose of obtaining access to DIRECTV satellite programming without paying DIRECTV. POC ¶ 18. DIRECTV claims that the unlooper is designed to repair access cards that have been rendered unusable by illegitimate use and is specifically designed to use with certain software further permitting the illegal programming of valid DIRECTV access devices. POC ¶ 18.

DIRECTV claims that Garnett's possession of the pirate devices, combined with his past subscription to DIRECTV, is evidence that Garnett illegally intercepted DIRECTV's satellite programming. Specifically, DIRECTV alleges the following claims:

> Count 1. Garnett (1) effected unauthorized interception and receipt of satellite programming through the use of illegal satellite decoding devices or by manipulation of the satellite system or by other means known only to him; (2) without authorization, intercepted, received, exhibited or otherwise assisted in the unauthorized interception, reception and exhibition of Satellite Programming transmitted by DIRECTV; and (3) used the communications for his own benefit or for the benefit of others who were not entitled to such communications in violation of 47 U.S.C. § 605(a).

> Count 2. Garnett intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV and that he disclosed or endeavored to disclose to others the contents of electronic communications knowing, or having a reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. § 2511.

Count 4. Garnett knowingly manufactured, assembled or modified an electronic, mechanical or other device or equipment knowing or having reason to know that the device or equipment is used primarily to facilitate the unauthorized decryption of satellite programming or direct-to-home satellite services or other prohibited activity. DIRECTV further alleges that Garnett programmed and reprogrammed DIRECTV access cards and designed electronic systems for use in surreptitiously obtaining DIRECTV satellite programming and that by removing and inserting pirate access devices and/or inserting illegally programmed access cards into valid DIRECTV receivers, he engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of satellite programming, in violation of 47 U.S.C. § 605(e)(4).

Count 5. Garnett unlawfully, intentionally and wrongfully converted DIRECTV's property for his own commercial use and benefit.

Count 6. Garnett's acquisition and use of pirate access devices violates Chapter 123 of the Texas Civil Practice and Remedies Code.


### III.  GARNETT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTV'S RESPONSE

Garnett seeks summary judgment against DIRECTV alleging that DIRECTV has produced no evidence to support a critical element of its claims: that Garnett intercepted signals without authorization and in which DIRECTV has a proprietary interest. D-SJM[2] ¶ 3. In his affidavit in support of his motion for summary judgment, Garnett states that he never intercepted or even attempted to intercept DIRECTV's signal without authorization. D-SJM, Exh. A, Garnett Aff't. He explains that he sought to learn about [smart card] technology for use in his business, but that he never received all the equipment he ordered [from Whiteviper], and that his project never got off the ground. Id. He claims that he received DIRECTV's signal, but only as a paying customer of DIRECTV. D-SJM ¶ 3.

---

[2]"D-SJM" refers to defendant Garnett's motion for summary judgment, DE #19.

In response to Garnett's motion for summary judgment, DIRECTV offers the following evidence:

Exh. A– Affidavit of Bill Gatliff, an electrical engineer with a formal background in computer science. Mr. Gatliff states that the Whieviper reader/writer and unlooper can be used to circumvent DIRECTV's conditional access system. Gatliff Aff't at 5-9.

Exh. B– Affidavit of Carol Fong-Hilton, a DIRECTV supervisor, authenticating Garnett's DIRECTV account records, and those of his ex-wife.

Exh. C– Declaration of Michael Houck, a paralegal in a Seattle law firm, verifying that attached exhibits are true and correct copies of information printed from Whiteviper's internet site. This declaration was filed in DIRECTV's lawsuit against Derek E. Trone d/b/a Whiteviper Technologies (the "Whiteviper lawsuit").

EXH. D – Affidavit of Michael Houck, stating that, pursuant to a settlement in the Whiteviper lawsuit, Trone turned over certain business records, and that the email attached as Exhibit A, dated September 18, 2000, refers to an order to be billed and shipped to Garnett.

Exh. E – Copy of Order entered in the Whiteviper lawsuit. DIRECTV contends that this Order adjudicates "the question of the primary function of the devices in question."

Exh. F – Copy of Order entered in an Ohio lawsuit.

EXH G– Deposition of Gary Garnett.

See P-SJR.[3]

In his deposition, Garnett testified that his partner, Donnie Ham, purchased two DIRECTV subscriptions for their construction company, H & G. Corporation. P-SJR, Exh. G, Garnett Depo. at 23-24. One subscription was for the office, and the other was for a deer lease in McMullen County. Garnett Depo at 23-24. The DIRECTV was activated 12 months a year at the office, and at the deer lease during deer season only. Id. at 24. Garnett has never had DIRECTV at a residence. Id. at 26.

---

[3]"P-SJR" refers to plaintiff DIRECTV's summary judgment response, filed at DE #34.

5

Garnett became interested in smart card technology for use at his company to keep track of his 60 to 80 employees and work tools. Garnett Depo at 32. He spoke to two individuals about the use of employee identification badges. Id. at 32-34. Within a few months after discussing it, Garnett ordered from Whiteviper a reader/writer and an unlooper. Id. at 34-40. He only received one device. Id. at 50. He attempted to contact Whiteviper through email and phone calls to tell it that his order was incomplete, but no one returned his calls or email. Id. at 50-51. He did not pay for the device he did not receive, and received credit for it on his credit card. Id. at 51-52.

Garnett did not attempt to use the device he did receive. Garnett Depo. at 54. Garnett gave up on his idea of using smart cards at H & G. Id. at 54.


## IV. **SUMMARY JUDGMENT STANDARD**

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552; Anderson v. Liberty

Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990). Summary judgment is mandated if, after adequate time for discovery and upon motion, the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23, 106 S. Ct. at 2552. See also Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 257 (5th Cir. 2001).

## V. DISCUSSION

### 1.    Violation of 47 U.S.C. § 605(a) and § 604(e) (counts 1 and 4).

In counts 1 and 4, DIRECTV alleges that Garnett received and assisted others in receiving DIRECTV's satellite transmissions in violation of the Cable Communications Act of 1984, 47 U.S.C. § 605(a) and § 605(e)(4). A critical element in each of these claims is proof that Garnett intercepted and/or unlawfully appropriated a signal in which DIRECTV has a proprietary interest.

Section 605(a) of Title 47 prohibits any unauthorized person from "receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio" and then "divulg[ing] or publish[ing]" that material except through authorized channels. The Communications Act further authorizes "any person aggrieved" by a violation of 47 U.S.C. §

7

605(a) to bring a civil action in federal court. 47 U.S.C. § 605(d)(6). Therefore, in order to prevail on a cause of action under this statute, DIRECTV has the burden of showing that a communication in which DIRECTV had proprietary rights was actually intercepted and then divulged. See DIRECTV, Inc. v. Karpinsky, 269 F. Supp.2d 918, 926 (E.D. Mich. 2003), vacated in part upon reconsideration, 274 F. Supp.2d 918 (E.D. Mich. 2003); Joe Hand Promotions, Inc. V. Rennard Street Enter., Inc., 975 F. Supp. 746, 753 (E.D. Pa. 1997). That is, DIRECTV cannot simply allege that it possesses evidence that Garnett bought a device that was, in principle, capable of intercepting its signal.

DIRECTV argues that its uncontroverted circumstantial evidence raises a fact issue on the question of whether Garnett pirated DIRECTV broadcasts because it establishes that Garnett: (1) had DIRECTV access; and (2) purchased pirate devices. It argues that these facts, in combination with Garnett's subscriber history, P-SJR Exh. B, raise such a fact issue.

It is true that a plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence. See Walker v. Darby, 911 F.2d 1573, 1578 (11th Cir. 1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including interception). In this case, however, the circumstantial evidence does not raise a fact issue as to an essential element of DIRECTV's claims, that is, actual or even attempted interception of the signal. Nor does DIRECTV point to cases supporting its argument that its evidence raises a fact issue.

In V–Cable, Inc. v. Guercio, 148 F. Supp.2d 236 (E.D.N.Y. 2001), the plaintiff alleged that the defendant violated 47 U.S.C. § 605(a) by purchasing and using or distributing pirate cable descrambling devices. The court held that the plaintiff failed to show that it was an "aggrieved

8

party" entitled to bring an action for violation of § 605(a) because there was no evidence that the

defendant distributed or used the pirate devices within the plaintiff's market area or elsewhere. The

court stated:

> A perusal of the statutes underlying the present action indicates that it is not a crime, nor a
> basis for a civil claim, for an individual to purchase or possess pirate descrambling devices,
> even if it appears that possession is with the intent to distribute....

V–Cable, 148 F. Supp. 2d at 242-43.

The court in V–Cable also observed that there was no evidence that the defendant decreased

the level of his cable service following his receipt of the descrambler, which "arguably would be

some evidence of his usage of an illegal device," and there was no testimony from the defendant, his

family members, or neighbors, that they viewed programming beyond that covered by the

defendant's subscription. Id. at 244-45.

Similarly, in a recent unpublished decision, Judge Sim Lake granted a defendant's motion

for summary judgment against DIRECTV on its § 605(a) and § 605(e) claims. The Court found

that, although the defendant admitted to having purchased and distributed a device described in §

605(e)(4), DIRECTV offered no evidence that the defendant actually used the device to intercept one

of DIRECTV's signals, and therefore, it did not have standing under the Communications Act as an

aggrieved party. See DIRECTV v. Bush, C. A. No. H-03-1765 (S.D. Tex., Oct. 24, 2003).

The Court is aware of two Michigan district court decisions denying a defendant's motion

for summary judgment based on DIRECTV's circumstantial evidence: DIRECTV v. Barnes, __ F.

Supp. 2d __, 2004 WL 302341 (W.D. Mich., Feb. 2, 2004) and DIRECTV v. Karpinsky, 274 F.

Supp. 2d 918, 921 (E.D. Mich.2003). In both of those cases, DIRECTV produced evidence that (1)

the defendant was a DIRECTV subscriber who possessed the necessary equipment to intercept

9

DIRECTV's signal; (2) the defendant purchased a pirate device; (3) the defendant *admitted* that he was aware that the pirate device could be used to intercept DIRECTV's signal *and that he had purchased the device for that purpose*; and (4) the unlooper had no legitimate purpose. Barnes, 2004 WL 302341 at *8; Karpinsky, 274 F. Supp. 2d at 921.

The two Michigan cases are distinguishable from the case at bar because Garnett emphatically denies having had knowledge of the pirating capabilities of the devices he purchased, and denies that he purchased them with the intent to intercept signals. P-SJR, Exh. G, Garnett Depo. at 30-31. DIRECTV offers no evidence to rebut Garnett's assertions: it does not offer any statements from friends or neighbors that Garnett admitted to gaining DIRECTV access without paying for it. There is no indication that Garnett has special training or more than a layman's understanding of computers.

Moreover, Garnett's subscriber records do not raise an inference of pirate activity. DIRECTV argues that Garnett's account is suspiciously lacking in "call-backs" (pay-for-view purchases) except for the Holyfield-Lewis fight. However, those same records indicate that Garnett was paying DIRECTV a monthly fee ranging from $ 30.00 to over $100.00 from September 1999 through March/April 2001. P-SJR Exh. B. That he did not spend more money purchasing pay-for-view programming in addition to his monthly fee is hardly evidence of illegal activity, and the fact that he did order and pay for the Holyfield-Lewis fight is evidence mitigating against such an inference. Further, there is no correlation between Garnett's purchase of the device in September 2000 with a corresponding decline in DIRECTV billing or use. See V-Cable, *supra*, 148 F. Supp. 2d at 244-45 (suggesting that decreased activity in cable service could be some evidence of pirating activity).

Finally, Garnett testified that, even though he ordered a reader/writer and an unlooper, he only received one device, and he is not even sure which device he got. Id. at 50. He never attempted to use it. Id. at 54. Although DIRECT"s expert states that there is no legitimate purpose for the unlooper other than to alter DIRECTV access cards,[4] he acknowledges that even "dumb" reader/writers are used in the legitimate business community, and opines only that a reader/writer *could* be used to circumvent DIRECTV access. P-SJR Exh. B, Gatliff Aff't at 5, 8. Thus, DIRECTV's circumstantial evidence fails to establish that Garnett even had the equipment necessary to illegally intercept DIRECTV's signal.[5]

This case is most similar to Bush. Although Garnett admits to having a purchased a device described in 47 U.S.C. § 605(e)(4), DIRECTV has offered no evidence that he actually used the device to intercept one of DIRECTV's signals such that it has standing to sue under the Act as an aggrieved person. According, the Court grants Garnett's motion for summary judgment on claims 1 and 4.

### 2.    Violation of 18 U.S.C. § § 2511 and 2512 (count 2).

DIRECTV also sues Garnett for violations of § 2511 (count 2) and § 2512 (count 3). As previously mentioned, the Court *sua sponte* dismissed DIRECTV's § 2512 claim finding that

---

[4]Garnett does not attempt to refute this assertion; however, even Gatliff admits that unloopers are marketed as "smart card repair terminals" that load new software or date into memory. P-SJR Exh. B, Gatliff Aff't at 5.

[5]The Gatliff affidavit also contains several conclusions that appear to be beyond the scope of the affiant's expertise or the support for which is not included in the affidavit. See, e.g., page 4 ("Individuals and businesses involved in facilitating piracy generally...." and "Persons involved in piracy generally...."); p 7 ("Developers of legitimate products... would not purchase preflashed chips at their higher prices."); p 9 ("The White Viper reader/writer was itself marketed for the purpose of circumventing DIRECTV's... access controls."). Because DIRECTV fails to raise a fact issue as to an essential element of its claims, however, it is unnecessary to address these conclusions.

11

DIRECTV could not maintain such a claim for mere possession of a pirate access device.[6] See DE #7.

Section 2520, the enforcement provision of the Electronic Communications Privacy Act of 1983, 18 U.S.C. §§ 2510 et seq. ("ECPA") authorizes a civil action by "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter ..." 18 U.S.C. § 2520.   To prevail on such a claim, DIRECTV must prove that the communication in question was "intercepted, disclosed, or intentionally used." Id.   As previously discussed, all DIRECTV has offered are allegations that Garnett purchased a device capable of such interception.  Garnett is granted summary judgment on DIRECTV's claim 2.

**3.   Civil conversion and violations of the Texas Civil Practice and Remedies Code.**

DIRECTV  alleges that Garnett is liable for civil conversion and that he violated Tex. Civ. Prac. & Rem. Code §§ 123.001, et seq.  Proving conversion requires proving actual theft.  P & T Mfg. Co., Inc. v. Exchange Sav. & Loan Ass'n, 633 S.W.2d 332, 333 (Tex. App.—Dallas 1982, writ ref'd, n.r.e.) (finding that conversion is only complete "where a person unlawfully and wrongfully exercises dominion and control over the property of another to the exclusion or defiance of the right of possession of the owner or of the person entitled to the possession of the property involved"). DIRECTV offers no evidence of conversion.  See  DIRECTV v. Bush, C. A. No. H-03-1765 (S.D. Tex., Oct. 24, 2003).

---

[6]Garnett has filed numerous copies of opinions and/or orders from other district courts in various DIRECTV cases.  See DE #21, #26, #33, #35.  The bulk of the opinions and/or orders dealt with the issue of whether DIRECTV may maintain a claim for violation of 18 U.S.C.§ 2512 based upon mere possession of a pirate access device, an issue already decided in Garnett's favor.  See DE #7.

By contrast, Tex. Civ. Prac. & Rem. Code § 123.002 creates a cause of action such that a party to a communication may sue a person who "intercepts, attempts to intercept, or employs or obtains another to intercept or attempt to intercept" a communication covered by the statute. Although under § 123.002 a plaintiff need only prove that the defendant attempted to intercept the communication, DIRECTV has presented no summary judgment evidence that Garnett attempted to do so. Bush, *supra*. Garnett is entitled to summary judgment on claims 5 and 6.

## VI. CONCLUSION

DIRECTV offers no evidence that would enable a reasonable jury to find for it on a critical element of each of its claims: that Garnett intercepted or attempted to intercept a communication in which DIRECTV had a proprietary interest. Accordingly, Garnett's motion for summary judgment is GRANTED. DIRECTV's claims against Garnett are dismissed.

ORDERED this ___25___ day of February, 2004.


_____
JANE COOPER-HILL
UNITED STATES MAGISTRATE JUDGE

13

Exhibit

B

**UNITED STATES DISTRICT COURT**                    **EASTERN DISTRICT OF TEXAS**

DIRECTV, INC.,                              §
                                           §
            Plaintiff,                     §
                                           §
*versus*                                   §        CIVIL ACTION NO. 1:03-CV-307
                                           §
NEAL MOSIER, RANDY SMITH,                  §
DEMETRIUS SMITH, CHRIS STEWTS,             §
ROY TATARCHUK, HARLAN WALKER,              §
CURT WILLIAMS, and LINN WOODS,             §
                                           §
            Defendants.                    §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Christ Stewts's ("Stewts") Motion for Summary

Judgment (#37). Stewts seeks summary judgment on Plaintiff DIRECTV, Inc.'s ("DIRECTV")

action asserting that he participated in the surreptitious purchase, possession, and use of, or

assisting others to use, devices designed to intercept and decrypt DIRECTV's protected satellite

communications. In its complaint, DIRECTV alleges violations of the Federal Communications

Act of 1934, as amended, 47 U.S.C. § 605(a), 605(e)(3)(4) ("FCA"), the Communications

Assistance for Law Enforcement Act of 1994, 18 U.S.C. §§ 2511-12 (the "Wiretap Act"), the

Texas Wiretap Act, TEX. CIV. PRAC. & REM. CODE ANN. § 123.001, *et seq.*, and civil conversion

under Texas common law. DIRECTV has indicated that it will not pursue the cause of action for

civil conversion; therefore, that claim is deemed withdrawn and will not be addressed. Having

reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law,

the court is of the opinion that summary judgment is warranted.

*v. Port Drum Co.*, 197 F. Supp. 2d 723, 730 n.5 (E.D. Tex. 2002); *Ladner v. City of N.Y.*, 20

F. Supp. 2d 509, 519 (E.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir.), *cert. denied*, 528 U.S. 1006

(1999); *Barnes Found. v. Township of Lower Merion*, 982 F. Supp. 970, 996 (E.D. Penn. 1997);

*Dowdell v. Chapman*, 930 F. Supp. 533, 541 (M.D. Ala. 1996); *Tilton v. Capital Cities/ABC,*

*Inc.*, 905 F. Supp. 1514, 1544 (N.D. Okla. 1995), *aff'd*, 95 F.3d 32 (10th Cir. 1996), *cert.*

*denied*, 519 U.S. 1110 (1997). "Evidence on summary judgment may be considered to the extent

not based on hearsay or other information excludable at trial." *Fowler v. Smith*, 68 F.3d 124, 126

(5th Cir. 1995) (citing *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992); *Martin v. John W.*

*Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)); *see Okoye v. University of Tex.*

*Health Sci. Ctr.*, 245 F.3d 507, 510 (5th Cir. 2001) (noting that hearsay statements are not

competent summary judgment evidence); *Garcia v. Reeves County*, 32 F.3d 200, 203 (5th Cir.

1994) (inadmissable hearsay will "not be enough to get past the summary judgment hurdle").

Here, the news articles relied upon by Stewts are inadmissible hearsay because they are

offered to prove the truth of the matter asserted--that smart cards have many functions and are not

limited to being used solely by DIRECTV. *See Anchee*, 197 F. Supp. 2d at 730 n.5; *Barnes*

*Found.*, 982 F. Supp. at 996 (citing FED. R. EVID. 801(c)). The articles are not sworn or

certified, and the authors were not subject to cross-examination, rendering them incompetent

summary judgment evidence. *See Dowdell*, 930 F. Supp. at 541. Thus, any statements made or

alluded to in the articles cannot be considered as evidence supporting Stewts's motion for summary

judgment. *See Anchee*, 197 F. Supp. 2d at 730 n.5 (citing *McClure v. Mexia Indep. Sch. Dist.*,

750 F.2d 396, 401 (5th Cir. 1985); *Dallas County*, 286 F.2d at 392).

C.    Section 605(e)(3)(C) of the FCA

Stewts contends he is entitled to summary judgment on DIRECTV's claim that he violated

§ 605(a) of the FCA because DIRECTV has not produced any evidence that he actually intercepted

its satellite signal.  Section 605(a) provides in relevant part:

> No person not being authorized by the sender shall intercept any radio
> communication and divulge or publish the existence, contents, substance, purport,
> effect, or meaning of such intercepted communication to any person.  No person
> not being entitled thereto shall receive or assist in receiving any interstate or
> foreign communication by radio and such use (or any information therein
> contained) for his own benefit or for the benefit of another not entitled thereto.

To have standing to bring a civil action for damages under § 605(e)(3) of the FCA, DIRECTV

must offer evidence that it is an aggrieved party.  Hence, DIRECTV must demonstrate that Stewts

actually intercepted, received, or assisted in receiving DIRECTV's proprietary satellite

transmissions.  See *DIRECTV, Inc. v. Beauchamp*, No. 2:02-CV-200, 2004 WL 302346, at *4

(W.D. Mich. Feb. 2, 2004); *DIRECTV v. Moreno*, No. 03-2478, 2003 WL 22927883, at *2

(D.N.J. Dec. 11, 2003); *DIRECTV, Inc. v. Bush*, No. H-03-1765, slip op. at 5 (S.D. Tex. Oct.

27, 2003).

Stewts admits to purchasing the access devices but maintains that he planned to use them

to build a security system and not to intercept or receive DIRECTV's satellite signal.  Stewts

contends that it would be impossible for him to pirate DIRECTV's signal because he has never

owned the necessary equipment to do so.  The devices that Stewts purchased, standing alone,

cannot intercept a satellite signal.  According to DIRECTV's complaint, in order to receive its

satellite signal, legitimately or otherwise, it is necessary to possess at least three items:  a

DIRECTV satellite dish, a DIRECTV receiver, and a DIRECTV access card (which can be

manipulated through the use of the pirate access devices into receiving DIRECTV's signal without authorization). Stewts testified, and DIRECTV does not dispute, that he has never subscribed to DIRECTV. Further, DIRECTV has not offered any evidence to show that Stewts owns or has ever purchased the necessary DIRECTV equipment. Stewts contends, therefore, that there is an absence of a genuine issue of material fact concerning an essential element of DIRECTV's claim, *i.e.*, intercepting or receiving its satellite signal.

DIRECTV maintains that the summary judgment record raises a reasonable inference that Stewts did indeed intercept, or assisted others in intercepting, its satellite broadcasts. The record contains the following summary judgment evidence: (1) records reflecting Stewts's purchase and possession of at least seven pirate access devices; (2) records indicating that Stewts visited the "pirateden" website, which DIRECTV maintains serves as a forum for the dissemination and exchange of information pertaining to satellite piracy; (3) affidavits from DIRECTV's experts explaining how pirate access devices are used to steal satellite signals, and; (4) an affidavit from DIRECTV Vice President Larry Rissler stating that a DishNetwork satellite dish could be used to receive DIRECTV's signal as long as one also had a DIRECTV receiver and a DIRECTV access card. To defeat summary judgment, the plaintiff need not produce direct evidence to establish that a communication was received or intercepted; rather, it may rely upon circumstantial evidence. *See Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir. 1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including interception). Nonetheless, "the plaintiff must produce circumstantial evidence sufficient to support the conclusion that there was an actual interception." *DIRECTV, Inc. v. Barnes*, 302 F. Supp. 2d

774, 784 (W.D. Mich. 2004). In this case, the circumstantial evidence produced by DIRECTV does not support an inference of actual interception of its signal.

DIRECTV relies on the opinion in *DIRECTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 919-22 (E.D. Mich. 2003) ("*Karpinsky II*") in support of its contention that it has produced sufficient circumstantial evidence to survive Stewts's motion for summary judgment, asserting that the evidence in *Karpinsky II*, in which the defendant's summary judgment motion was denied, is "almost identical to the evidence presented against Defendant Stewts." DIRECTV, however, misconstrues the two *Karpinsky* decisions. In the first *Karpinsky* opinion, the court granted the defendant's summary judgment motion because DIRECTV did not produce evidence sufficient to establish that there was actual interception of its satellite signal. *See DIRECTV, Inc. v. Karpinsky*, 269 F. Supp. 2d 918, 926-927 (E.D. Mich. 2003) ("*Karpinsky I*").

The evidence presented by DIRECTV in *Karpinsky I* is almost identical to that proffered against Stewts—the purchase and possession of pirate access devices, testimony by DIRECTV experts at to the uses of the pirate access devices, and an attestation by Karpinsky that he never owned a DIRECTV receiver or access card. *See id.* Faced with this circumstantial evidence, the court granted the motion for summary judgment, finding that a reasonable fact finder could not infer that Karpinsky unlawfully intercepted DIRECTV satellite signals in light of the evidence that he had never owned the necessary satellite reception equipment. *See id.* Shortly thereafter, DIRECTV moved for reconsideration, citing new evidence that the defendant had, in fact, purchased a DIRECTV system and therefore had the ability to intercept its signals. *See Karpinsky II*, 274 F.Supp. 2d at 921. On reconsideration, the court vacated the summary judgment, finding that the defendant's possession of a DIRECTV system, in conjunction with the pirate access

10

devices, raised a fact issue as to whether he pirated DIRECTV's signal. *See id.* In contrast, in this case, DIRECTV has adduced no evidence that Stewts ever possessed DIRECTV satellite equipment.

The facts in the case at bar are strikingly similar to those of an unreported decision from the Southern District of Texas, in which the court granted the defendant's motion for summary judgment. *See Bush*, slip op. at 8. In *Bush*, DIRECTV failed to produce evidence showing that the defendant had the necessary equipment, beyond the pirate access devices, to intercept its signal. Further, in another unreported decision from the Southern District of Texas, the court granted defendant's motion for summary judgment based on a deficiency in DIRECTV's proof of signal interception. *See DIRECTV, Inc. v. Garnett*, C.A. No. C-03-346, slip op. at 13 (S.D. Tex. Feb. 25, 2004). In *Garnett*, DIRECTV produced evidence that the defendant had purchased and possessed pirate access devices and was a subscriber to DIRECTV, thus possessing the necessary equipment to pirate its signal. *See id.* at 8. The court held, however, that although the defendant admitted to having purchased a pirate access device and owned equipment capable of intercepting DIRECTV's signal, DIRECTV had offered no evidence "that he actually used the device to intercept one of DIRECTV's signals . . ." *Id.* at 11.

Here, the court concludes that the circumstantial evidence proffered by DIRECTV is insufficient to establish the existence of the actual interception of its proprietary satellite signal, an element essential to its case on which it bears the burden of proof at trial. Therefore, summary judgment on this claim is mandated.

11

D.    Section 2511 of the Wiretap Act

Stewts disputes DIRECTV's claim of violation of § 2511 of the Wiretap Act on the same

basis as he challenges the § 605(a) claim, asserting that DIRECTV cannot show actual interception

of its signal. Although § 2511 is a criminal provision, a civil right of action is provided by § 2520

to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or

intentionally used in violation of this chapter . . . ." 18 U.S.C. § 2520(a). Therefore, as with

§ 605(a) of the FCA, in order to establish its claim that Stewts violated § 2511, DIRECTV must

show that its signal was intercepted, disclosed, or intentionally used. *See Beauchamp*, 2004 WL

302346, at *8; *DIRECTV, Inc. v. Boonstra*, 302 F. Supp. 2d 822, 827 (W.D. Mich. 2004). In

this situation, as discussed above, DIRECTV has not produced sufficient evidence to raise a

genuine issue of material fact as to the interception of its signal. Accordingly, summary judgment

on DIRECTV's § 2511 claim is proper.

E.    Section 2512 of the Wiretap Act

Although not raised by Stewts, there is a split of authority as to whether a civil right of

action exists for violation of § 2512. *Compare, e.g., DIRECTV, Inc. v. Perez*, 279 F. Supp. 2d

962, 964 (N.D. Ill. 2003) (denying motion to dismiss upon recognizing the existence of a civil

right of action) *with DIRECTV, Inc. v. Childers*, 274 F. Supp. 2d 1287, 1289 (M.D. Ala. 2003)

(granting motion to dismiss for lack of private right of action). Section 2512 provides in relevant

part:

> [A]ny person who intentionally . . . manufactures, assembles, possesses, or sells
> any electronic, mechanical, or other device, knowing or having reason to know that
> the design of the device renders it primarily useful for the purpose of the
> surreptitious interception of wire, oral, or electronic communications and that such
> device or any component thereof has been or will be sent through the mail or

12

transported in interstate or foreign commerce . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2512(1)(b).

Section 2520, as written, provides a civil right of action to those whose "wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter . . . ." Some courts have interpreted "in violation of this chapter" to mean any provision set forth in Chapter 119 of Title 18 of the United States Code, the Wiretap Act, thus including § 2512(1)(b). *See DIRECTV, Inc. v. Gatsiolis*, No. 03 C 3534, 2003 WL 22111097, at *2 (N.D. Ill. Sep. 10, 2003); *DIRECTV, Inc. v. Drury*, 282 F. Supp. 2d 1321, 1324 (M.D. Fla. 2003). An equal number of courts, including several within the Fifth Circuit, have focused on the fact that the provision specifies those whose communication was "intercepted, disclosed, or intentionally used" and completely omits mention of the possession or assembly of an interception device provision. These courts have held that § 2520 does not provide a civil cause of action for violation of § 2512. *See DIRECTV, Inc. v. Terry*, No. Civ. A. 2:03-CV-0137-J, 2004 WL 350480, at *1 (N.D. Tex. Jan. 29, 2004); *DIRECTV, Inc. v. Jerolleman*, No. Civ. A. 03-1465, 2003 WL 22697177, at *2 (E.D. La. Nov. 12, 2003).

In addition, the Fifth Circuit has held that the ambit of civil liability for violations of the Wiretap Act is much narrower than the scope of criminal liability. *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir.), *cert. denied*, 532 U.S. 1051 (2001). At issue in *Peavy* was whether civil liability under § 2520 covered those who "procured any other person" to intercept an oral communication in violation of § 2511(b). *Id.* The court reasoned that because § 2520 makes no mention of the "procures any other person" language, a civil right of action is provided

13

only for the referenced violation, requiring proof that one "intercepted, disclosed, or intentionally used" an electronic communication. *Id.* at 169. Accordingly, the court concludes that § 2512's prohibition against manufacturing, assembling, possessing, and/or selling any device that is primarily useful for the interception of electronic communication is not enforceable through a civil action under § 2520. Therefore, summary judgment on this count is required.

    F.    <u>Section 605(e)(4) of the FCA</u>

DIRECTV also alleges that Stewts violated § 605(e)(4) of the FCA, which provides civil damages against a person who:

> [M]anufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services.

Stewts's motion for summary judgment is premised on the notion that DIRECTV has not produced evidence that he intercepted its satellite signal. According to the explicit language of the statute, however, a violation of § 605(e)(4) does not require interception. *See Boonstra*, 302 F. Supp. 2d at 829. DIRECTV argues that based on Stewts's purchase of "a number of devices" that could be used to pirate DIRECTV's signal, it is reasonable to infer that he was engaged in the distribution of those devices. In his sworn deposition, Stewts testified that when he realized he could not manage to create a security system with the devices, he threw them in the trash. DIRECTV has not offered any evidence to the contrary. Moreover, the number of devices was not so great as to refute Stewts's uncontroverted testimony that they were for his personal use in devising a security system. Therefore, the court finds that there is no issue of material fact as to

14

Stewts's alleged selling or distributing the devices in violation of § 605(e)(4) of the FCA, and summary judgment is warranted on this claim.

G.     The Texas Wiretap Act

In his motion for summary judgment, Stewts does not specifically address DIRECTV's charge that he violated the Texas Wiretap Act. Unlike the Federal Wiretap Act, the Texas Wiretap Act covers not only those who actually intercept electronic communications but also those who attempt to intercept such communications. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 123.002(a)(1). Therefore, DIRECTV need only show that Stewts attempted to intercept its signal. DIRECTV, however, has not produced competent evidence that Stewts attempted to pirate its satellite signal, as discussed previously with regard to the FCA and Wiretap Act counts. Again, DIRECTV's circumstantial evidence is not enough to create a genuine issue of material fact regarding Stewts's alleged violation of the Texas Wiretap Act. Hence, summary judgment on this claim is appropriate.

III.     Conclusion

Accordingly, Stewts's motion for summary judgment is GRANTED. There remain no material facts in dispute as to DIRECTV's claims alleging violation of § 605(a), (e)(3), and (e)(4) of the FCA, §§ 2511 and 2512 of the Wiretap Act, and the Texas Wiretap Act. DIRECTV has failed to present a cause of action that merits relief, and Stewts is entitled to judgment as a matter of law as to DIRECTV's affirmative claims.

IT IS SO ORDERED.

15

SIGNED at Beaumont, Texas, this 14th day of _____April_____, 2004.

_____
Marcia A. Crone
United States District Judge