UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DIRECTV, Inc,** : | |
| a California corporation, : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : CIVIL NO. 3:03CV518 (DJS) | |
| **CHARLES DESKIN et al.,** : | |
| Defendant. : | |

**MEMORANDUM OF DECISION**

Plaintiff DirecTV, a satellite programming company, brings this action against the defendant, Paul Ciotti ("Ciotti") alleging the unlawful interception of satellite programming pursuant to 47 U.S.C. § 605(a), 18 U.S.C. § 2511(1)(a) and 18 U.S.C. § 2512(1)(b). Ciotti has filed a motion for summary judgment **[doc. #23]**. The motion is **GRANTED**.

**Facts**

Plaintiff, DirecTV, is a national direct broadcast satellite system that offers its services on a subscription basis. DirecTV encrypts, or electronically scrambles, its satellite transmissions to prevent unauthorized viewing of its programming. Individuals who purchase services from DirecTV receive a DirecTV Access Card, a satellite dish, an integrated receiver descrambler and software from the company that permits them to descramble and view the encrypted programming.

Defendant Paul Ciotti ("Ciotti"), purchased a device known as a Vector Super Unlooper with SU2 Code ("Unlooper") from Vector Technologies on March 7, 2001. Ciotti was, at the time of this purchase, a network administrator for a financial software

company charged with the creation of security cards, known as "smart cards." A smart card is a credit-card size device that contains a programmable computer chip that can be encoded with information. A "key card" such as those often used to permit individuals to open locked doors in a secure environment is a type of smart card. Ciotti states that an Unlooper can be used to read and write smart cards and that he purchased the device for this purpose. Ciotti claims that he was unable to use the Unlooper because the device was not shipped with either directions for use or interface software. Ciotti states that he packed the Unlooper in its box one month after purchase and has not used the device since that time.

Plaintiff claims that the Unlooper can be used to alter DirecTV access cards to permit interception of programming without buying the necessary subscription. The card used by DirecTV to control access to its programming is a type of smart card, and it is accepted by both parties that an Unlooper can be used to write smart cards. DirecTV hired Secure Signals International ("SSI") to aid it in the investigation and prevention of the theft of its proprietary programming signals. SSI worked with federal, state and local authorities to identify the manufacturers, distributors and end users of technology that is designed to defeat the signal encryption used by DirecTV. Ciotti came to the attention of DirecTV as the purchaser of a device capable of use in the theft of cable and satellite programming.

It is undisputed that the Unlooper, without the use of other devices, does not permit the improper interception of DirecTV's signal. The record is void of evidence that might explain how the Unlooper works or what other devices are necessary to permit the interception of satellite programming. Ciotti admits that he purchased a satellite dish

sometime in 2000 or 2001. Ciotti became a DirecTV subscriber in January 2003, with monthly bills of between $50 and $100, approximately two years after purchasing the satellite dish and Unlooper. DirecTV asserts that the Unlooper, dish and DirecTV subscription can be used in combination to steal programming, although there is no expert testimony in the record that explains how this theft can occur or what equipment is actually necessary to steal satellite programming.

Ciotti denies the assertion that he used the Unlooper, in conjunction with his DirecTV subscription and his satellite dish, to pirate DirecTV programming and to aid others in so doing. Plaintiff admits that it has no evidence that Ciotti stole programming, cannot identify what programming he is alleged to have stolen and cannot prove that he used the Unlooper at all, much less for an illegal purpose.

### Discussion

DirecTV brings this action pursuant to the Communications Act, 47 U.S.C. § 605, and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511-2512. DirecTV claims that Ciotti used "pirate access devices" to intercept signals from their satellite systems without paying for the services. Ciotti argues that summary judgment is appropriate because: 1) there is insufficient evidence to establish that he violated 47 U.S.C. § 605 (a); 2) there is insufficient evidence to establish that he violated 18 U.S.C. § 2511(1)(a); and 3) DirecTV does not have a private cause of action for alleged violations of 18 U.S.C. § 2512(1)(b).

### Standard of Review

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2nd Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)). A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

**1. 47 U.S.C. §605(a)**

Plaintiff's first claim alleges a violation of the Federal Communications Act, 47 U.S.C. §605(a). The statute prohibits both the unauthorized interception of radio communications and the giving of assistance to others attempting to intercept unauthorized radio communications. The act does not apply to satellite television transmissions unless the programming is encrypted and a marketing agent has been established to authorize lawful reception of the satellite cable transmissions. 47 U.S.C. §605(b). The act permits enforcement in a civil action by "any person aggrieved" as a

result of a violation of paragraph (a). 47 U.S.C. §605(e)(3)(a). A "person aggrieved" is defined as "any person with proprietary rights in the intercepted communication…including wholesale or retail distributors of satellite cable programming." 47 U.S.C. §605(d)(6). DirecTV's programming falls within the scope of 47 U.S.C. §605 and it is a person aggrieved within the meaning of section 605(d)(6).[1]

An aggrieved person must show that the defendant (1) intercepted or aided the interception of proprietary satellite programming and (2) divulged or published, or aided in the divulging or publishing of, the programming transmitted by the plaintiff. California Satellite Systems v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985). The Second Circuit has held that a violation of §605 may be inferred from proof of the mere possession of a cable descrambler, without direct evidence of use. Community Television Systems, Inc. v. Caruso, 284 F.3d 430, 432-435 (2d Cir. 2002)(affirming district court opinion that found liability based on proof of purchase, receipt and installation of a descrambler). The holding of Caruso has been applied to claims brought by DirecTV against the purchasers of alleged "pirate devices" such as Unloopers. See, DirecTV, Inc v. Griepsma, No. 03-CV-6243, 2005 WL 608250, *5-7 (W.D.N.Y. March 11, 2005); DirecTV, Inc. v. Gemmell, 317 F.Supp.2d 686, 693 (W.D.La. 2004)("purchase and installation of equipment designed to unlawfully intercept electronic communications will suffice to

---

1. Ciotti argues that DirecTV is not a person aggrieved within the meaning of the statute because it cannot offer evidence of what programming was allegedly stolen, and so cannot prove that it had a propriety interest in that programming. Ciotti's contention is unpersuasive. DirecTV claims that the programming it provides as a wholesale or retail distributor was unlawfully intercepted. DirecTV need not prove the exact name of each program allegedly stolen to have standing under §605(d)(6). It is enough that DirecTV properly pled the theft of its proprietary signal. Standing is not dependent on offering sufficient proof to prevail on the merits of a claim.

create a rebuttable presumption of a violation of Section 605"); DirecTV, Inc. v. McCool, 339 F.Supp.2d 1025, 1033 (M.D.Tenn. 2004)(same).

  DirecTV relies on the authority to infer a violation of §605 in lieu of proof in this action. The undisputed facts show that Ciotti purchased an Unlooper, a satellite dish and a subscription to DirecTV at separate times. There are no other facts present that can substantiate DirecTV's claim. The record does not prove or permit the inference that an Unlooper serves no useful purpose other than the unlawful interception of satellite programming, although DirecTV repeatedly makes this assertion. Unlike in Caruso there is no evidence that Ciotti purchased a limited or unusually small programming subscription that might allow for an inference of an intent to steal more expensive programming. See, Caruso, 284 F.3d at 433 ("[e]ach of the five appellants either had accounts with TCI or resided in homes that received TCI service, but did not pay for any premium or pay-per-view services"). DirecTV offers no expert testimony to show how the Unlooper would work with a satellite dish and a DirecTV subscription to permit interception of DirecTV's programming.

  Plaintiff relies heavily on photographic evidence that Ciotti has a satellite dish installed, along with a DirecTV receiver dish. There is no basis for inferring that this is evidence of anything other than the lawful use of legal products (including DirecTV's own services). Absent some evidence that Ciotti actually used the Unlooper or some testimony that would explain how Ciotti's mere possession should lead to an inference of liability, there is no genuine issue of material fact that can be viewed in plaintiff's favor to permit an inference of actual interception, a required element of a claim under §605.

  DirecTV emphasizes a recent ruling by the United States District Court for the

Eastern District of Michigan in DirecTV v. Karpinsky, 274 F.Supp.2d 918 (E.D.Mich. 2003). The Karpinsky court reconsidered a ruling granting summary judgment in favor of the defendant after DirecTV produced evidence of actual ownership of the alleged pirating device. The Karpinsky decision was, like Caruso, based on a more developed set of facts than are here presented. The defendant in Karpinsky admitted to using a "Smartcard Recovery System" on his home computer, but denied ownership of the equipment necessary to intercept and receive DirecTV programming. DirecTV, Inc. v. Karpinsky, 269 F.Supp.2d 918, 923 (E.D.Mich. 2003)(overruled in part on reconsideration). The court relied heavily on the lack of evidence of the ability to receive DirecTV's signal and when DirecTV produced the missing evidence, the court's opinion changed.

There is no dispute about Ciotti's ability to receive DirecTV's signal–indeed he pays for the privilege. The missing facts in this action go entirely to the alleged use of the Unlooper and the actual function of the Unlooper in conjunction with the other devices owned by Ciotti. DirecTV argues that an inference can be drawn, but an inference must be based on facts in evidence, not facts in theory. The record simply does not substantiate DirecTV's allegation sufficiently to permit the necessary inference, even when all the facts are viewed in its favor. Summary judgment is granted to Ciotti on the First Count of the Complaint.

**2. 18 U.S.C. §2511(1)(a)**

Count Two of DirecTV's Complaint alleges that Ciotti violated the Wiretap Act, 18 U.S.C. §2511(1)(a), which makes it a crime to intentionally intercept, endeavor to intercept or procure anyone to intercept or endeavor to intercept any wire, oral or

electronic communications. Section 2511(1)(a) requires proof of interception as an element of the claim. The analysis of DirecTV's claim under §650(a) applies with equal force here. The record does not contain sufficient evidence to create a genuine issue of material fact that, when resolved in plaintiff's favor, would permit an inference that Ciotti has intercepted satellite programming without authorization. Summary judgment is granted to Ciotti on this issue.

### 3. Private Cause of Action to Enforce 18 U.S.C. §2512(1)(b)

Ciotti argues that he is entitled to summary judgment on Count Three of the Complaint because DirecTV does not enjoy a right to bring a civil cause of action for enforcement of 18 U.S.C. §2512(1)(b). Plaintiffs such as DirecTV, "whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation" of Title 18, Chapter 119 of the United States Code may bring a civil action against the "person or entity, other than the United States, which engaged in that violation." 18 U.S.C. §2520(a). A dispute exists among the federal courts regarding the scope of the right to civil recovery created by §2520(a), specifically whether it encompasses claims for violations of §2512(1)(b). The Second Circuit has not ruled on this question of law.

Section 2512(1)(b) defines a crime of possession. "[A]ny person who intentionally…possesses or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of…electronic communication" where the device is moved through interstate commerce or the mails may be subject to fines or imprisonment. 18 U.S.C. §2512(1)(b).  The plain language of §2520(a) limits the class of private plaintiffs to those who have had their communication "intercepted, disclosed, or

intentionally used" in violation of Chapter 119. Similarly, the class of potential defendants under §2520(a) is limited to those who engaged in one of the listed violations. Claims based on evidence of mere possession are expressly excluded from the list of grievances subject to civil remedy through §2520(a). See, DirecTV, Inc. v. Bertram, 296 F.Supp.2d 1021, 1024 (D.Minn. 2003)(holding that "as a matter of grammar and sentence structure, the phrase 'that violation' refers to the interception, disclosure, or intentional use of communications mentioned earlier in that sentence, and not to the possession of prohibited devices").

The relationship between §2512(1)(b) and §2520(a) has been discussed exhaustively and there is little new that can be added to the debate. Although some courts have held that §2520(a) creates a private right of action for enforcement of §2512(1)(b),[2] the better interpretation of the statute is the one adopted by the majority of courts that finds no private right of action. The recent ruling of the Eleventh Circuit in DirecTV v. Treworgy, 373 F.3d 1124 (11th Cir. 2004) provides a compelling and persuasive interpretation of the statute that this court now adopts.

The Treworgy court identified five factors that led to it conclude that no cause of action exists. First, the court read the plain language of §2520(a) to exclude claims based on mere possession. Treworgy, 373 F.3d at 1127. Second, any reading of the statute that permitted DirecTV to enforce §2512(1)(b) through §2520(a) would create a constitutional standing problem due to DirecTV's inability to effectively show that it is injured by a third party's mere possession of an object. Id. Third, the language of 18 U.S.C. §2511(2)(a)(ii), which exempts from illegality a narrow category of interceptions,

---

1. See, DirecTV v. Needleman, No. 03-2476, 2003 U.S.Dist. LEXIS 23645, *1 (D.N.J. Nov. 6, 2003); DirecTV v. Perez, 279 F.Supp.2d 962 (N.D.Ill. 2003).

disclosures and uses, reinforces the conclusion that only those types of offenses are subject to civil enforcement through §2520(a). Id. at 1127-1128. Fourth, a finding that no civil action exists is consistent with pre-amendment interpretations of §2520(a), which held that no right of action to enforce violations of §2512 existed. The Treworgy court found that nothing in the amended version of §2520(a) expanded the class of violations that could give rise to a civil suit beyond the class identified in the earlier version. Treworgy, 373 F.3d at 1128. Finally, the court rejected a public policy basis for implying a cause of action where no textual basis existed. Id. at 1129.

The Treworgy court's analysis is highly persuasive. There is no basis in the text of §2520 for finding a cause of action to enforce §2512(1)(b) and DirecTV offers no compelling reason for this court to disagree with the majority of courts to consider this issue. DirecTV may not maintain a cause of action based on §2520(a) to enforce §2512(1)(b) and summary judgment is granted to Ciotti on this issue.

## Conclusion

Ciotti's motion for summary judgment **[doc. #23]** is **GRANTED**. The evidence in the record is insufficient to permit a reasonable inference that Ciotti unlawfully intercepted DirecTV's encrypted satellite programming. The remaining claim may not be maintained as a private cause of action. Judgment shall enter in favor of Ciotti on all counts. The Clerk of the Court shall close the case.

**IT IS SO ORDERED** at Hartford, Connecticut, this  29th  day of March, 2005.

                              /s/DJS
**DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE**